IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01850-NYW

JONATHAN SANDERS, *individually and on behalf of all others similarly situated*,

 Plaintiff,

v.

GLENDALE RESTAURANT CONCEPTS, LP,

 Defendant.

---

## ORDER ON MOTION FOR CONDITIONAL CERTIFICATION
## AS A COLLECTIVE ACTION AND NOTICE TO CLASS MEMBERS

Magistrate Judge Nina Y. Wang

 This matter comes before the court on the Parties' "Joint Stipulation Regarding Conditional Certification and Notice to Class Members" ("Motion" or "Motion for Conditional Certification"), which seeks conditional certification and notice pursuant to 29 U.S.C. § 216(b). [#33, filed November 27, 2019]. Pursuant to the Order of Reference dated November 5, 2019 [#30], this civil action was assigned to the undersigned Magistrate Judge for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. The court has carefully reviewed the Motion and associated briefing, the entire case file, and the applicable law, and concludes that oral argument will not materially assist in the resolution of this matter. For the reasons stated herein, the court GRANTS IN PART and DENIES IN PART the Motion.

## BACKGROUND

 Plaintiff Jonathan Sanders ("Plaintiff" or "Mr. Sanders") initiated this action on behalf of himself and all other similarly situated persons that are or were valet drivers at Defendant Glendale

Restaurant Concepts, LP's ("Defendant" or "Glendale Restaurant Concepts") adult entertainment clubs within the last two years. *See generally* [#1].

Plaintiff, a Colorado resident, allegedly performed valet services for Defendant at its adult entertainment clubs from approximately December 2016 through October 2018 in Denver, Colorado. [#1 at ¶¶ 7, 8]. He alleges that, like all valet drivers for Glendale Restaurant Concepts, he was misclassified by Defendant as "exempt" from the overtime requirements of the FLSA and routinely denied any wages at all for hours worked, despite working approximately forty hours each workweek and oftentimes more than forty hours each week. *See generally* [#1]. Plaintiff alleges that Defendant "set the rules and had complete control over the venue where Plaintiff worked," and "provided the tools needed to provide valet services, including but not limited to communication devices and a valet podium." [*Id.* at ¶¶ 31, 32]. Plaintiff "had to follow Defendant['s] rules or risk loss of some or all of his tips." [*Id.* at ¶ 33].

Plaintiff initiated this action on June 26, 2019. *See* [*id.*]. Pertinent here, Plaintiff asserts that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for not paying Plaintiff, or any of its valet drivers, overtime compensation for hours worked in excess of forty or the federally mandated minimum wage. *See* [#1 at ¶¶ 56–68]. The undersigned held an initial Scheduling Conference with the Parties on October 24, 2019. *See* [#27]. At the Scheduling Conference, the Parties discussed the filing of a motion for collective action and, thus, the court set a December 2, 2019 deadline by which Plaintiff was to file his Motion for Conditional Certification and set a telephonic Status Conference for February 4, 2020. *See* [*id.*].

Plaintiff filed the instant Motion for Conditional Certification and Notice to Class Members on November 27, 2019. *See* [#33]. As explained above, Plaintiff filed his Motion as a "Joint Stipulation" and stated therein that "the parties respectfully request that the Court enter an order

approving the terms of th[e] Stipulation . . . and approving the Notice, Consent, Electronic Notice, Electronic Consent, and Reminder Notice attached" thereto. [*Id.* at 3]. Accordingly, the Motion for Conditional Certification is now ripe for determination.

## LEGAL STANDARD

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees. *See* 29 U.S.C. §§ 206–207. Under the statute a covered employer must pay its employees for the time that it employs them, and the FLSA generally requires covered employers to compensate employees for work in excess of forty hours in a work week. *See* 29 U.S.C. §§ 206(a), 207(a). The required overtime compensation is one and one-half times an employee's "regular rate" of pay. 29 U.S.C. § 207(e). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of minimum wage and overtime provisions. It provides in relevant part that "[a]n action to recover the liability [for unpaid overtime compensation] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA thus provides plaintiffs the opportunity to proceed collectively, which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA). "The trial

court is tasked with determining who is 'similarly situated' for purposes of a § 216(b) claim in a 'manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'" *Pena v. Home Care of Denver, LLC*, No. 19-cv-00069-CMA-NYW, 2019 WL 5577947, at *1 (D. Colo. Oct. 29, 2019) (quoting *Hoffmann-LaRoche*, 493 U.S. 165 at 170–72). Plaintiffs who wish to participate in an FLSA collective action must opt into the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). *See also In re Am. Family Mut. Ins. Co. Overtime Pay Litigation*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009).

In *Thiessen v. General Electric Capital Corp.*, the Tenth Circuit approved a two-step process, known as the *ad hoc* approach, for determining whether putative collective members are similarly situated to the named plaintiff. 267 F.3d 1095, 1105 (10th Cir. 2001). Pursuant to this approach, the trial court determines at the initial "notice stage" whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. During the second stage in the *ad hoc* approach, after discovery has concluded and often prompted by a motion to decertify, the court applies a stricter standard to determine whether the action should continue as a collective action. In particular, the court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required filings] before instituting suit." *Id.* at 1103 (citing *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)). Numerous courts in this District have followed this *ad hoc* approach in determining whether plaintiffs can move forward collectively under the FLSA. *See, e.g.*, *Pena*, 2019 WL 5577947;

*Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005); *but see Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d, 1300, 1309 (D. Colo. 2015) (rejecting the two-step process in favor an approach that allowed "workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous.").[1]

Here, given the Parties' Stipulation, it appears that they agree that the two-step *ad hoc* procedure is appropriate, and the only issue before the court at this juncture is whether their proposed Notices to potential members of the collective and the proposed Consent to Join Collective Action are appropriate. The court considers these issues below.

**ANALYSIS**

**I.   Conditional Certification**

At this juncture, the "notice stage," the court may rely on the allegations of the complaint and any supporting affidavits filed by the plaintiff. *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004). *See also Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M.D. Tenn. 2015) (citation and internal quotation marks omitted). Thus, the standard for conditional certification is a lenient one, which "usually results in conditional certification." *Pena*, 2019 WL 5577947, at *1.

---

[1] The Tenth Circuit concluded that the "spurious" approach applied in *Turner* was not such a gross abuse of discretion to warrant mandamus relief, but noted that it took no position as to the merits of such approach. *In re Chipotle Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *3 & n.1 (10th Cir. Mar. 27, 2017).

Here, the Parties stipulate that the court should conditionally certify the proposed collective action. Plaintiff alleges that, like all valet drivers for Glendale Restaurant Concepts, he was misclassified by Defendant as "exempt" from the overtime requirements of the FLSA and routinely denied any wages at all for hours worked, despite working approximately forty hours each workweek and oftentimes more than forty hours each week. *See generally* [#1]. While Defendant does not oppose conditional certification of the class, it denies Plaintiff's claims and "asserts that it complied with the law and was not the valets' employer" and thus "not obligated to compensate valets." [#33-1 at 2]. The Parties stipulate to the conditional certification of a collective action consisting of Plaintiff "and all persons who worked as valet drivers at Mile High Men's Club in the last two years." [#33 at ¶ 1]. Specifically, the Parties have "stipulate[d] to conditional certification of the following class pursuant to the [FLSA]: Aaron Wisniewski, Alex Johnson, Angela Hamilton, Brad Bogard, John Nolan, Kyle Chadwick, Scott Drevnick, and Jonathan Sanders." [*Id.*].

Having reviewed Mr. Sanders's Complaint and applicable case law, I conclude that Mr. Sanders's Complaint supports a finding that he and any other present or former valet driver eligible under the proposed definition of the collective action "were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). Indeed, the alleged FLSA overtime and minimum wage violations arise from Defendant's single decision, policy, or plan regarding the (a) classification of its valet drivers as "exempt," and (b) compensation of its past and/or present valet drivers encompassed by the proposed definition. Accordingly, the court conditionally certifies the following collective:[2]

---

[2] This court uses the term "collective" rather than "class," out of recognition that FLSA collectives and Rule 23 classes are distinct from one another. *See Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1113 (D. Colo. 2017).

> All named persons who worked as valets at the Mile High Men's Club in Denver, Colorado, at any time from June 26, 2017 through the present, including Aaron Wisniewski, Alex Johnson, Angela Hamilton, Brad Bogard, John Nolan, Kyle Chadwick, Scott Drevnick, and Jonathan Sanders.

## II. Notice and Consent Forms

Notwithstanding the Parties' stipulation to the Proposed Notice and Consent to Join Form, [#33-1; #33-2; #33-3; #33-4; #33-5], these documents require some modification before obtaining the court's approval. Briefly, the court addresses the sufficiency of the Proposed Notice and Consent to Join Form, making note of areas that require amendment when necessary, and encourages the Parties to file an amended joint Notice and Consent to Join Form.

I turn first to the aspects of the Parties' stipulated proposal that I find sufficient. "Under the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate[;] it should not alter plaintiffs' proposed notice unless such alteration is necessary." *Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 3929663, at *5 (D. Colo. June 25, 2015).

Here, the Parties agree to the stipulated Proposed Notice and Consent Form and the terms and conditions of dissemination thereof. For the reasons below, the court agrees that the following dissemination conditions and method are "fair and accurate." *Bryant*, 2015 WL 3929663, at *5. First, the Proposed Notice purports to extend to valet drivers who worked at Mile High Men's Club within the last two years and specifies June 26, 2017 as the date from which to calculate the two-year period. [#33 at ¶ 1; #33-1 at 2]. I find that the Parties have clearly articulated the two-year period applicable to the collective action. Second, as to the method of delivery of the Proposed Notice, the court finds that the use of mail, email, and text message, as stipulated by the Parties, is more than sufficient. Typically, First Class Mail is sufficient, but the court is cognizant

7

of the fact that that current mailing addresses may be difficult to obtain and that email or text messaging may be more efficient in reaching potential opt-in plaintiffs.

I turn now to the areas of the Proposed Notice and Consent to Join Form requiring amendment. First, the Notice represents that the "Plaintiff seeks to sue on behalf of himself and on behalf of all named persons who worked as valets at the Mile High Men's Club in Denver, Colorado since June 26, 2017." [#33-1 at 2]. That is an inaccurate statement of the law. Relying upon the United States Supreme Court's ruling in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (U.S. 2013), the *Oldershaw* court observed that "[i]n an FLSA 'collective action' every named and 'opt-in' plaintiff pursues his or her individual claim ... [and] the FLSA 'collective action' acts much like a civil suit with many plaintiffs who pursue their own claims." *Oldershaw v. DaVita Healthcare Partners*, Inc., 255 F. Supp. 3d 1110, 1113 (D. Colo. 2017). Similarly, another court in this District observed that "[w]age rights are individual rights, and a collective action is the device that enables co-workers holding these individual rights to aggregate and enforce them, collectively." Turner v. Chipotle Mexican Grill, Inc., 123 F. Supp. 3d 1300, 1308–09 (D. Colo. 2015) (emphasis in original). Accordingly, the collective should not be referred to as a class. In addition, to the extent that any individuals join the collective, they proceed as individuals, collectively, rather than as a "class" with a representative. To the extent that they enter some type of agreement with the named Plaintiff and counsel with respect to the exercise of their respective rights, such agreement is not required by the law through the joining of the collective and any language that suggests otherwise should not be included in a court-approved Notice. *See Oldershaw*, 255 F. Supp. 3d at 1115 ("The 'opt-in' plaintiff may choose to ride on the coattails of the original plaintiff or be represented by the counsel for the original plaintiffs, but he or she is not obligated to do so.") (citation omitted).

Second, the Motion includes a 90-day opt-in window. [#33 at ¶ 8]. The court notes that courts in this District favor a 60-day opt-in period. *See, e.g.*, *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-cv-02324-RBJ, 2017 WL 4621276, at *2 (D. Colo. Aug. 3, 2017); *Cooper v. Noble Casing, Inc.*, No. 15-cv-01907-WJM-CBS, 2016 WL 8314686, at *1 (D. Colo. May 2, 2016); *May v. E & J Well Serv. Inc.*, No. 14-cv-00121-RBJ, 2014 WL 2922655, at *3 (D. Colo. June 27, 2014). The Parties do not explain the need for a 90-day opt-in window, particularly given that the Parties propose to notify all the potential opt-in plaintiffs via mail, email, and text message. Accordingly, I find that 60 days will provide potential opt-in plaintiffs with ample time to make a decision and respond, particularly given the multiple types of communication contemplated.

Third, the Parties propose a reminder notice be sent by mail and email thirty days after the date of mailing and/or emailing of the Notice and Consent to all members of the FLSA Class who have not returned a Consent form. This reminder notice, however, fails to distinguish whether a reminder notice will be sent to individuals who respond to the original Notice and Consent and affirmatively "opt-out". Accordingly, I find that the reminder notice may be sent by mail and email thirty days after the date of the initial Notice and Consent is sent, but only to individuals who have not yet responded. *See May*, 2014 WL 2922655, at *3 (approving a reminder notice, but only to those individuals who had not yet responded).

Finally, the *Hoffman-La Roche* notice should describe the nature of the FLSA collective action and offer the recipient the opportunity to "opt-in" to the action by filing a consent form. *See Pena*, 2019 WL 5577947, at *2. "It should also advise recipients of their right to be represented by counsel for the original plaintiff, to obtain independent representation, or to participate *pro se*," *id.*, and explain "certain rights of an 'opt-in' plaintiff, including the right not to be bound by a

settlement that the original plaintiff advocates." *Id.* (citing *Ortez v. United Parcel Serv., Inc.*, No. 17-cv-01202-CMA-SKC, 2018 WL 4328170, at *3 (D. Colo. Sept. 11, 2018)).

While the Notice as proposed adequately advises putative opt-ins of the requirements and/or demands of participating in this collective action, including, but not limited to, that they may be required to participate in written discovery, appear for deposition, or appear for trial, I find that it nevertheless fails to (1) sufficiently apprise putative opt-ins of their ability to both opt-in <u>and</u> proceed either with independent counsel or *pro se*, and (2) inform putative opt-ins of their right not to be bound by a settlement that the original plaintiff advocates, even if they do "opt-in."

Here, Section 7 of the proposed Notice explains that recipients "have a right to hire [their] own attorney and pursue [their] potential claims individually," but only explains this right as it pertains to individuals who choose not to join the instant action. [#33-1 at 3]. Section 8 of the proposed Notice of Right to Join Lawsuit states in bold text, "You also have a right to hire your own attorney and pursue your potential claims individually. If you sign a *Consent to Join* you agree that the attorney for the class will represent you in this case." [*Id.* (emphasis in original)]. According to Section 8, Plaintiff's attorneys and "the attorneys for the class" are one in the same. [*Id.*].

"Neither Section [8] or any other section of the proposed Notice advises a potential plaintiff that she or he may opt-in and proceed *pro se*." *See Pena*, 2019 WL 5577947, at *3. Thus, the proposed "Notice and Consent Form fail to advise potential plaintiffs that she or he may choose to opt-in to the collective action *and* represent her or himself." *Id.*, at *2. Moreover, "the proposed [Notice and] Consent Form provide[] only one option for a potential plaintiff to select if she or he chooses to opt-in [to] the collective action—that she or he must designate the law firm" representing Plaintiff to also represent the individual opting in. *See id.*, at *3. "Accordingly, to

10

ensure that the proposed Notice and Consent Form are 'fair and accurate,' both documents must be modified to advise a potential plaintiff that she or he may opt-in the collective action <u>and</u> choose either to be represented by Plaintiff's counsel, to obtain independent representation, <u>or</u> to participate *pro se*." *See id.* (emphases added).

The proposed Notice and Consent Form also fail to inform putative opt-ins of their right not to be bound by a settlement that the original plaintiff advocates, even if they do "opt-in." Indeed, the proposed Consent Form gives only one option: to "consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action[.]" [#33-2]. Therefore, to ensure that the proposed Notice and Consent Form are "fair and accurate," they

> must be modified to advise a potential plaintiff of her or his opt-in rights, including whether to decline to be represented by the Named Plaintiff, whether to choose to make decisions on her or his own behalf concerning what claims and arguments should be presented and how, whether to accept any settlement offer or proceed to trial, and whether to be bound by a settlement that the Named Plaintiff advocates.

*See Pena*, 2019 WL 5577947, at *3.

Accordingly, the Parties are **ORDERED** to meet and confer no later than **December 23, 2019**, as to amending the Proposed Notice and Consent to Join Form in compliance with the court's instructions and guidance stated herein. On or before **December 23, 2019**, the Parties shall file a Motion to Approve Notice and Consent to Join Form, and shall submit a mutually acceptable revised Notice and Consent to Join Form for the court's consideration. In the event the Parties cannot arrive at mutually acceptable drafts, they shall submit a single proposed Notice and/or Consent to Join Form, indicating the language of the Notice on which they agree and the language on which they cannot agree, as well as the content they propose, respectively.

**CONCLUSION**

Consistent with the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Conditional Certification [#33] is **GRANTED IN PART and DENIED IN PART**; and

(2) On or before **December 23, 2019**, the Parties shall **FILE** a Motion to Approve Notice and Consent to Join Form with a mutually acceptable amended Notice and Consent to Join Form, or a notice of impasse that includes their respective contentions regarding how to further amend the Notice and/or Consent to Join Form.

DATED: December 13, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge